## No. 14,079.

### MUCHOW ET AL. *v.* CENTRAL CITY GOLD MINES COMPANY.
(65 P. [2d] 702)

Decided February 1, 1937. Rehearing denied March 1, 1937.

Mr. HERBERT M. MUNROE, for plaintiffs in error.

Messrs. ENOS, SHERMAN & MORRATO, for defendant in error.

*In Department.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

DEFENDANT in error, as plaintiff in the trial court, obtained a decree and judgment thereon against plaintiff in error, Muchow, defendant below, reforming a written contract in effect between them as parties thereto. Error is assigned, and reference will herein be made to the parties as plaintiff and Muchow.

Plaintiff operates an ore reduction mill at Central City and was constructing a plant for the disposal of its mill tailings. This plant is on property adjoining that which Muchow had contracted to purchase from the Colorado and Southern Railway Company. Plaintiff, to acquire the right to deposit tailings on this adjoining ground, on December 17, 1934, entered into a contract to that end with Muchow. The contract was drawn by plaintiff and recited that Muchow's contract with the railway company had been exhibited to it; that the contents of the contract were known to it; and the right acquired was to deposit tailings from its mill in an amount not less than 25,000 tons per month. The contract gave the right to plaintiff to stack tailings on any portion of the railroad property which Muchow was acquiring, and was to commence December 10, 1934, and expire December 31, 1937. It contains numerous provisions not material to the determination of the case. After making fifteen payments under the contract as written, from December, 1934, to July, 1935, plaintiff ceased payments, claiming mutual mistake as to the following paragraph: "Party of the first part agrees that in consideration of the faithful performance of the above mentioned conditions, and the conditions hereinafter to be performed by the party of the second part, that it will pay to the party of the second part as follows: Three Cents (.03) per ton of ore milled, settlement to be made every seven (7) days, on the basis of dry tonnage milled, and it will furnish to a designated point on the property of the party of the second part, above referred to, up to eighty (80) horse power per day, at its expense, for the exclusive use of the party of the second part."

60

It was sought to reform the contract "so as to provide that plaintiff is to pay or cause to be paid three cents per ton for that proportion of the total ore milled as the proportion of the tailings on the land covered by the contract bears to the total amount of tailings deposited." This reformation is sought on the allegation: "That the actual detailed extent and location and its position with respect to surrounding ground of the land in said contract referred to, which the said defendant had contracted to purchase from the Colorado & Southern Railway Company, was *unknown to the plaintiff* and *defendant,* William M. Muchow, and the number of tons of ore, the tailings from which could be deposited on said ground at a cost that would not be prohibitive, taking into consideration the grade of ore to be treated, was *unknown to plaintiff* and defendant; that the amount of tailings, to wit, tailings from a minimum of 25,000 tons of ore milled each month for a period of three years, which plaintiff agreed to deposit on said ground, referred to in said contract, was agreed upon by mutual mistake of plaintiff and defendant, William M. Muchow." It was further alleged: "That in fact it was the *intention of the plaintiff* to pay to the defendant the sum of 3 cents per ton of ore milled, the tailings from which were deposited on the land deeded from the Colorado & Southern Railway Company to William M. Muchow." And further "That said *intention* was *known* to or *suspected by the defendant,* William M. Muchow, and the failure to make said contract so provide was due to a mistake on the part of the plaintiff *known to or suspected by the defendant.*"

These allegations were denied and the issue thus made. There is no allegation that a mutual mistake of the tonnage basis compensation was made. The mistake, if any, seems to have been on the part of the plaintiff only, according to its allegations: That in fact it was the intention of the plaintiff to pay, and that that intention was known to or suspected by the defendant. On the face of

the allegations they appear to lack mutuality. Apparently the only mistakes alleged to be mutual have reference to the size of the land covered by the Muchow contract with the railway company and in estimating the amount of the tailings that could be deposited thereon at a cost not prohibitive. Plaintiff is in no position to claim error as to the amount or area of the land covered in the railway company contract, since in the contract with Muchow it recited that the contract had been exhibited to it and its contents known. The area of the land is therein fully set forth, and a blueprint is attached showing its shape and location. Plaintiff's evidence on this question was the testimony of some of its officers and agents to the effect that they were misled or mistaken as to the size of the acreage embraced in the railway company contract and that they had not examined or seen the railway company contract, while it is undisputed that plaintiff drew the contract. Plaintiff did not question the correctness of the statement of payments made by it from December, 1934, to July, 1935, under its contract with Muchow, or that the payments were made on the basis of all tonnage milled as stated in the contract.

Muchow now contends that plaintiff is estopped to deny the recitals of its own contract and to claim that it did not know the extent or shape of the tract of land upon which it sought to obtain, and did obtain, the right to deposit its mill tailings. It seems that plaintiff has, by the recitals of its written contract, specifically asserted its knowledge of the contract of the railway company with Muchow. Full knowledge of that contract would fully apprise it of the extent and location of the land involved, and under such circumstances, the rule of estoppel should apply. The extent and location of the ground upon which plaintiff sought to obtain a right to deposit its tailings, and the adequacy of such ground for its uses and purposes, was the very basis of the negotiations with Muchow, and if in the face of the contract recited, it could be heard to say that it had made a mis-

take as to the extent and location, then such mistake arose from its own negligence. It was called upon to exercise such diligence as a reasonable person under the circumstances would have exercised. If such had been exercised, then information as to the exact extent of the ground involved could have been obtained from the railway company contract with Muchow, and in addition thereto the records of the county wherein the property is located, where a deed to the property outlined in the contract was of record, were open to it. Equity will not relieve plaintiff, and thereby encourage its apparent negligence.

The allegation of plaintiff that "the failure to make said contract so provide was due to a mistake on the part of the plaintiff known or suspected by the defendant," is not an allegation of mutual mistake. This allegation relates to the question of the amount of tailings for which Muchow was to be paid and the basis for the payment. Muchow stands on the contract which calls for three cents per ton on all ore milled. If a mutual mistake occurred upon the making of the contract, then the contract called for the performance of a thing that neither party thereto intended should be done, and in acting thereunder, neither party did what they intended to do. It appears that Muchow intended that he should receive three cents per ton for all ore milled, and it further appears that defendant intended to pay that amount because it did so without any complaint until after making fifteen payments as hereinbefore mentioned. Because plaintiff has discovered that a compliance with the express terms and wording of the contract, will make it unprofitable, it should not expect a court of equity to reform the contract. There is no evidence before the court that the "intention of plaintiff" ever was expressed, at the time of making the contract or before, and evidence to warrant the reformation of a contract on such an allegation must be clear and convincing that the mistake was common to both parties.

The contract gave plaintiff what it wanted, that is, the right to deposit its tailings on the land involved. Whether it could do so profitably was its concern, and the results, though disappointing, it must assume. It does not appear that Muchow made any representations or warranties along this line or even entered into a discussion of the matter prior to or at the time of the making of the contract. Plaintiff protected itself in the contract by the reservation of a right to release itself from further obligation under the contract by the payment of $3,000. It did not elect to take advantage of that stipulation. If plaintiff made a poor bargain, and did not choose to relieve itself by payment of the amount mentioned, then equity will not intervene. That plaintiff understood the contract as written is evidenced by the fact that it acted under it, received the rights contracted for, and paid according to its terms. By this course it accepted the contract from its inception without complaint and acted thereunder for a period of six months.

The court erroneously decreed the reformation of this contract as prayed, and its judgment thereon is reversed.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE KNOUS concur.