Hurlbut, J.,
rendered the opinion of the court.
August 13, 1908, defendant in error, as plaintiff, filed the complaint in this action in the District Court of Otero county. The purpose of the action, as shown by the complaint, is to recover possession of a strips of land fifty-three by four hundred feet, which is included within the boundaries of block fifteen in the town of Ordway, Colorado'.
Plaiptiff in error succeeded to. the rights of Cash, one of the original defendants, and filed a petition in intervention, was permitted to become a party to the action, and in fact is the only interested party defendant now before the court. In its petition it sets out copy of mortgage from Cash to itself, therein mortgaging- a part of said) block fifteen, the description of which is identical with that of the quit claim deed hereinafter referred to.
It appears from the record that block fifteen is a part of section fourteen, township twenty-one south, range fifty-seven west; and that on July 13, 1894, The Ordway Town & Land Company, then being the owner of said section fourteen, by *513 and through its board of directors, unanimously adopted a certain plat, Exhibit B, showing blocks, streets, etc., in the town of Ordway, in which appears said block fifteen, which plat by apt words dedicated to the public use of said town the public roads thereon shown. The plat was filed for record in the recorder’s office October 27, 1894. Exhibit D is an enlarged copy of Exhibit B, and Exhibit E is a replica of Exhibits B and D, except that no dedication appears written thereon, and that some of the blocks thereon shown are platted into lots. Exhibit A, a plat filed for record September 23, 1895, shows certain blocks, lots and streets, in the town of. Ordway, but does not show block fifteen. The plat designated Exhibit B is inscribed as follows; “The Ordway Town & Land Company’s Subdivision of section 14, township 21 south, range 57 west, Otero County, Colorado.” On all the plats and exhibits just mentioned, the east line of block fifteen and the west line of block sixteen are coincident, and no' road or public highway is shown to exist between said blocks or within the boundaries of either thereof.
The record also shows that The Ordway Town & Land Company is a domestic corporation, organized in 1890; that the town of Ordway was incorporated August 29, 1900; that on July 14, 1894, the land company, by warranty deed, conveyed said block fifteen to Wm. C. Bradbury, describing in part t'he premises conveyed as follows: “Block No. * * * 15 * * * according to the plat and subdivision of said section fourteen, made by The Ordway Town & Land Company, and of record in the office of the County Clerk and Recorder of Otero (now Crowley) county, Colorado';” that on September 20, 1905, said Bradbury, by warranty deed, conveyed to Thornton H. Cash the east one-third of said block, in these words: “The'E one-third of block 15, in the town of Ordway, Colorado;” that on May 26, 1906, said Bradbury, by warranty deed, conveyed to Thornton H. Casffi and J. Horner Peck the remaining portion of said block, in these terms: “The W two-thirds of block 15 in the town of. *514 Ordway;” that- on May 29, 1906, said Cash and Peck, by warranty deed, conveyed to defendant “Right Reverend C. Matz, Bishop of Denver, to- be held in trust for the Catholics of Ordway” the west two-thirds of said block fifteen, in the following terms: “The W two-thirds of block number' fifteen (15) in the town of Ordway, according fio the recorded plat of said town,” and certain water rights.
Plaintiff'in error claims that an eighty-foot street runs north and -south through the east portion of said block fifteen, that the city has for years maintained such street and used the same as a public thoroughfare, laid water pipes along the same, graded and otherwise improved it. If this contention prevailed it would leave block fifteen, from east to west, only 350 feet instead of 430, as shown by the plats in evidence, and would leave the west two-thirds of the block, purchased by defendant in error, only 233R3 feet -from east to west, instead of 286% as claimed by him. The only question for determination is whether or not the alleged eighty-foot street exists in the easterly portion of said block fifteen. The city is not a party to> the suit, and the decree does not purport to foreclose -any rights it might have concerning said street. The principal evidence relied upon by plaintiff in error to sustain its case, is that concerning the alleged street along' the east portion of the block, and the exercise of supervision by the city over the same, and the recognition by defendant in error as well as by other people of the existence and use of such street; and the further evidence that prior to the time 'Cash and Peck sold the premises to the bishop they had agreed between themselves that the eighty-foot street existed as stated, and that they would recognize the same. All this evidence, however, is controverted, and the court specifically found that no- such street existed. The only documentary evidence of a street running north and south through the easterly portion of block fifteen is an old map, Exhibit 3 (identical with Exhibit 1 j offered in evidence by plaintiff in error, but upon objection excluded by the court. It showed a street *515 eighty feet wide running north and south through the eastern part of block fifteen. The evidence shows this old map, which contains the inscription “Plat of the Town of Ordway,” was made by Mr. Hills at the request of Mr. Ordway in April, 1890. It was never recorded. There is no dedication thereon, and it is not shown to have ever been promulgated by the land company as an official map, to be used and relied on by it or by the public at large, nor is it shown to' have ever been referred to in any deed made by the land company, or any of its grantees, when conveying property included therein. Whatever may have been the purpose of its creation it is conclusively shown to have never been recognized by the land company as. showing the true lines on any lot, block, street or alley, within the boundaries of the town of Ordway. This repudiation of the map by the land company is clearly manifested in the recital found on the map Exhibit B, viz:
“This certifies that The Ordway Town & Land Company was originally the legal owner of all of section fourteen (14) township twenty-one (21) south of range fifty-seven (57) west, in Otero, county, state of Colerado; that this plat is made and filed in strict accord with deeds heretofore made of a part of its. lands within said section fourteen .(14) ; that this plat confirms said deeds and description and is in no way or manner in conflict therewith; that the title to the remaining portion of its lands in said section fourteen (14) hereby platted is clear and free from all liens and incumbrances and that the public roads platted and noted thereon of various widths are hereby dedicated by this.act to the public use.”
There is only one map of record, Exhibit B, in which is shown block fifteen entire, as it was at the time the deeds heretofore mentioned were executed and recorded. The very first deed from the land company to Bradbury, given July 14, 1894, describes the land as “block 15 according to' the plat and subdivision of said section 14 made by The Ordway Town & Land Company,” and recites that the plat was. of record. This descriptive language is identical with the words found on .the *516 plat Exhibit B. Under the evidence in the case this description could have no- reference to any other plat than Exhibit B, which shows the line between blocks fifteen to sixteen to be coincident. It is true that, notwithstanding the recital in the deed that the plat referred to was of record, the evidence shows it was not recorded until October 27th of the same year, about three months after the date of the deed. Still, the recital found on the map itself, as recorded, clearly and unequivocally confirms the deed, and recites that the plat was made and filed in strict accord with this deed, as well as all others given prior to recording of the plat, for land included within the same. Any layman reading the deed and examining the plat would readily find therefrom that the whole of block fifteen, as shown by the plat, was deeded to Bradbury. After this suit was begun, and on April 2, 1909, said Cash, by quit claim deed, conveyed a portion of block fifteen to plaintiff in error, in the following words:
“The south 375 feet of the east one-third of block 15 in The Ordway Town & Land Company’s Subdivision of sec. 14, twp. 21 south, range 57 west (and also- known as the town of Ordway).”
In its brief plaintiff in error strenuously contends that all the 'deeds affecting block fifteen, from the land company and its grantees, down to the deed from Cash and Peck to defendant in error, describe the land in such a way that no one can tell therefrom what property was conveyed by such deeds. In other words it urges that in none of such deeds is the description therein found connected with the recorded plat, Exhibit B, and that no- proper reference to such plat can l>e found in any of such deeds-. We are not impressed with this contention, or with the soundness of such reasoning. It appears to the court entirely clear that no other property was referred to in said deeds than block fifteen as shown in the remorded plat, Exhibit B, and that the descriptions plainly refer thereto. That plat shows the block to be 400 feet north and south by 430 feet east and west, without any street whatever *517 .included therein or adjoining it on the east; and that defendant in error purchased the west two-thirds thereof. The undisputed testimony of several witnesses discloses that a great number of deeds, conveying divers lots and blocks in the town of Ordway had been recorded, and that it was the usual custom in that neighborhood to- write the descriptions therein in substantially the same words as found in the descriptions in those deeds we have heretofore mentioned, that is to say, “Lot * * * block * * * in the town of Ordway.” Moreover, in a number of mortgages, as well as in the quit claim deed given by Cash himself to plaintiff in error, the descriptions therein refer to the recorded plat, Exhibit B, for identification of the property intended to be therein conveyed. In no> deed is any mention made of a street between blocks fifteen and sixteen. The evidence is conclusive that no other block fifteen exists within the corporate limits of said town, and that the subdivision of section fourteen by the land company referred to- in the original deed from that company to Bradbury is entirely within the limits of the incorporated town of Ordway, with the exception possibly of a small part lying south of the Missouri Pacific railway. The only title Bradbury had to block fifteen (which he afterwards conveyed to Cash and Peck, who. in turn conveyed to- defendant in .error) was the title that passed by the warranty deed from the land company to him, dated July 14, 1894, and that deed specifically ¡referred to the company’s subdivision pla.t of section fourteen, Exhibit B, the language in the deed being almost. identical in that respect with that found on the plat. It is true that the deed refers to- the plat as being recorded,’ though, as we have shown, the plat was not recorded until about three months thereafter. The record shows, however, that the plat was in existence, and had been approved by the board of directors of the town on July 13, 1894, the day before the company executed Bradbury’s deed. The recital oh' the plat, above quoted, clearly shows that all deeds given by the company prior to the recording of the plat, with their *518 descriptions, were executed and delivered, and intended to- be executed and delivered, by the company, according to said plat, Exhibit B. That exhibit is the only recorded plat showing block fifteen and adjoining blocks and streets within the corporate limits of Ordway, and those deeds reciting that they conveyed certain portions of “block fifteen in the town of Ordway,” sufficiently identified the property conveyed as being the block fifteen, according to- its lines and location, appearing on said Exhibit B.
The above reasoning is in direct conflict with that of counsel for plaintiff in error, who> urgently contends that neither Exhibit B, nor any other map of record, is designated in terms as- a plat of the town of Ordway, hence there is no warrant in law for identifying the block fifteen, called for in the descriptions, by a reference to the plat Exhibit B. It is significant to- note in this connection that in the petition of intervention of plaintiff in error it claims recovery for.
“The S. 375 feet of the E. Yz o-f block 15 in The Ordway Town & Land Company’s Subdivision of section 14, township 21 S, range 57 W (also- known as the town of Ordway).”
Here the petitioner itself uses the same description as found in defendant in error’s deed from Cash and Peck, and then adds thereto the statement that the subdivision is “also known as the town of Ordway.” Plantiff in error ought not to complain of the description used in the deed from Cash and Peck to defendant in error, when it adopts the same description as a basis for its recovery.
From our reading of the record we are persuaded that the description of the property found in the deed from Cash and Peck toi plaintiff Matz, for the west two-thirds, of block fifteen, taken in connection with the writing found on the plat, Exhibit B, clearly shows that the property thereby conveyed was in fact the west two-thirds of block fifteen as shown by that map, and that said block fifteen was 430 feet from east to west and 400 feet from north to south, and no *519 street or public way existed on its eastern boundary, or within - the lines thereof. Entertaining this view, we doi not think that there is any ambiguity or uncertainty in the description, or in any of the deeds previously made purporting to convey the same premises. This being our conclusion, it becomes unnecessary to consider at length the numerous authorities cited by counsel relative to correcting defective descriptions in deeds in an action at law. Even if we assume that the descriptions in the deeds, composing plaintiff’s chain of title required extrinsic evidence to identify the specific land intended to be, and which in fact was, conveyed thereby, then the evidence adduced by plaintiff undoubtedly cured any uncertainty in the descriptions and rendered the deeds effective as conveyances. No error was committed by the court in admitting the evidence it did, which tended to show what property was conveyed by the descriptive words used. Counsel for plaintiff in error further contends that the trial court fatally erred in admitting, over his objections, the evidence tending to explain what land was referred to by the descriptive words used in the deeds; and that the effect of such, evidence was to show that the deeds conveyed a different tract of land than that described therein, which would only be permissible in a suit in equity to reform the deed. If such a situation were disclosed by this record, counsel’s position-would be unanswerable, but this court and counsel are far apart in their analysis of the record respecting these matters. We reach an opposite conclusion to that of counsel upon the record showing as to the facts disclosed. The evidence introduced by plaintiff tended to show that the descriptive language found in the deed from Cash and Peck to himself necessarily and exclusively referred to the identical block fifteen, as it appeared in the recorded plat, Exhibit B. It in no- way tended to vary the meaning of the words, or to make the de-. scription fit a different tract of land than that described, to-wit, block fifteen. If from such evidence it appeared that the language used in the-description was such as was com *520 monly-'used in describing the same property in deeds of sale in that locality, such evidence would be admissible in such an action as the one at bar. In such case a suit in equity to reform' the deed Would not be necessary to authorize the introduction of such evidence.
Sullivan v. Collins, 20 Colo. 528, 39 Pac. 334, involved a contest for real property between the claimant under a tax deed and the owner of the premises. The treasurer’s deed described the property, as “Lot 5,. block 144, East Denver, Arapahoe county, Colorado.” The premises were platted as' part of “Clement’s Addition tO' the city of Denver,” such plat being of record. On the plat the disputed premises were described as “Lot 5, block 144, Clement’s Addition to the city of Denver.” The tax claimant contended that the property described in the plat as “Lot 5, block 144, Clement’s Addition to the city of Denver,” was clearly as well known by that description as by the description “Lot 5, block 144, East Denver.” The trial court admitted oral testimony for the purpose of showing that the two descriptions applied to one and the same piece of property, and' that the property was as well known by the one description as by the other. The owner urged that fatal error was committed by the trial court in admitting- this testimony. The Supreme Court sustained the lower court’s ruling, using in part this language:
“It is a fundamental principle of the law of real property that oral evidence is admissible for the purpose of showing that a description used in a conveyance, as commonly under- * stood in the vicinity, clearly designates the property.”
That case appears toi be squarely in point, as the undisputed evidence in the case at bar shows that for a long period of time' innumerable deeds had been recorded, therein conveying portions of blocks shown in Exhibit B by the brief description “Block * * * in the town of Ordway,” and such was the customary language used in the community for conveying parts of said block fifteen, and it was the common *521 understanding in that locality that such description appplied to the identical block fifteen shown by said map, Exhibit B.
In Laughlin et al, v. Hawley, 9 Colo. 170, 11 Pac. 45, the question of the sufficiency of the description in the sheriff’s deed was involved, it being contended by one of the parties that the sheriff’s deed was void for uncertainty in the description. The court said in part:
“Where the description of the property is in such general terms as to call for evidence dehors the writing, parol evidence is admissible to apply it to- the subject matter, and thereby render certain what would otherwise be doubtful and indefinite. ‘If, from such evidence, it appears that the terms used!, as commonly understood in the neighborhood, clearly designate the property levied upon or sold, the description must be regarded as sufficient.’ Freem. Ex’ns, § 281; Pipe v. Smith, 4 Colo. 466.”
From Stanley v. Green, 12 Cal. 148, we extract the following :
“This is an action of ejectment to> recover the possession of certain premises situated in the county of Napa. * * *
“That the evidence of the circumstances under which the deed was executed is admissible does not admit of a question. These circumstances place the court in the position of the parties, and enable it to interpret intelligently the language 'used by them. It is not to contradict or vary the terms of the instrument, that the evidence is received, but to apply them to the subject matter. * * * A designation of the tract by a particular name or number is sufficient; and if it can be rendered certain by extrinsic evidence, this is as good a description as one by metes and bounds. It is undoubtedly essential to the validity of a conveyance, that the thing conveyed must be described SO' as to be capable of identification, but it is not essential that the conveyance should itself contain such a description as toi enable the identification to be made without the aid of extrinsic evidence.”
*522 None of the evidence in the case at bar tends to contradict or vary the terms of the plaintiff’s warranty deed for the west-twoi-thirds of block fifteen. It goes no- further than to apply the descriptive words used to the subject matter of the conveyance. Other cases of equal force, following the rule, are: Blair et al. v. Bruns, 8 Colo. 397, 8 Pac. 56; Pipe v. Smith, supra; Chambers et al. v. Watson et al., 60 Ia. 339, 14 N. W. 336, 46 Am. Rep. 70; Scheible v. Stagle, 89 Ind. 323; Caldwell v. Village of Carthage, 40 Ohio St. 453; Derham v. 1 Hill, 57 Colo. 345, 142 Pac. 181; 13 Cyc. 544. In most of the cases above cited the actions were in law, or in ejectment, or in the nature of ejectment, to recover possession of real property.
Counsel for plaintiff in error has earnestly discussed numerous assignments of error, each of which has received careful consideration by the court, but as the decisive question involved has been already determined in favor of the judgment below, noi good purpose can be accomplished by discussing at length all the points raised. We will briefly notice two questions raised, which counsel seems to think necessitate a reversal.
First. It is contended that the amendment of plaintiff’s complaint allowed by the court changed the action from one at ilaw to- one in equity. We do not think this claim tenable. Plaintiff nowhere, in the original or amended pleading, asked or suggested that his deed be reformed. TÍie substantial, specific prayer of plaintiff’s pleadings., however, is for possession of the premises in dispute, and that he be put in possession and defendant be ousted therefrom. Throughout the trial and in this court defendant in error has tenaciously contended that his title deeds are sufficient in an action at law and there is no reason whatever for a suit in equity to reform the samé. He suggests that his amendment was not necessary, but was filed from over-abundance of caution. However that may be, ’we think the record shows this proceeding to be an action at. law, and that the evidence admitted by the court did not tend *523 to vary the terms of the deed, but merely explained what was meant by the descriptive words used.
Decided October 13, A. D. 1914.
Rehearing denied November 9, A. D. 1914.
Second. Plaintiff in error asserts that the town of Ordway was an indispensable party. This point seems to be wholly without merit, as the entire ground claimed and sued for by plaintiff below, and recovered by him, in no way conflicts with the eighty-foot street claimed by defendant to exist. That street (if it is a street) lies on the east boundary of said block fifteen, and would come wholly within the, east one-third of that part owned by Cash as shown by the record. It would in no way conflict with the west two-thirds of the block. If the city had been impleaded in the first instance, it is more than likely that it would have pleaded a disclaimer. It is apparent that this controversy is wholly between plaintiff in error and defendant in error, and that the city was in no way an indispensable party, not even a necessary party. The record fails to disclose that plaintiff below was making any claim to such street or attempting to exercise any dominion over any part of the same.
Perceiving no error in the record, the judgment will be affirmed.

Judgment Affirmed.