No. 18,428.

LEWIS R. CREWS *v.* THEODORE S. YENTER, ET AL.

(352 P. [2d] 295)

Decided May 16, 1960.   Rehearing denied June 6, 1960.

Mr. William B. Paynter, Mr. Richard B. Paynter, Mr. Earl G. Eby, for plaintiff in error.

Messrs. Thomas & Thomas, for defendants in error.

*En Banc.*

Mr. Justice Hall delivered the opinion of the Court.

We refer to the parties by name or as they appeared in the trial court, where Yenters were plaintiffs and Lewis R. Crews was defendant.

On May 8, 1938, defendant and one L. E. Crews entered into a written contract with Theodore S. Yenter, hereinafter referred to as Yenter, whereby the Crews agreed to sell and Yenter agreed to buy for the sum of $6500.00 some 570 acres of land located in Yuma County. The purchase price was payable as follows: $1000.00 on the date of the contract; $1000.00 March 1, 1940; the balance of $4500.00 on or before March 1, 1944. Said contract further provided that on completion of the payments as provided in the contract, Crews would convey, by warranty deed, merchantable title to the lands free of liens and, in addition, would:

" * * * make, execute and deliver * * * *a bill of sale* for three (3) second feet of water from the *Hale Ditch,* a plat of which ditch is now of record in the office of the County Clerk and Recorder of Yuma County, Colorado, which bill of sale shall convey such rights in and to said three (3) second feet of water *from said Ditch* as said first parties may have under and by virtue of *adjudication or adjudications now or hereafter made* or

entered by a Court or Courts of competent jurisdiction, relative to said *Hale Ditch.*" (Emphasis supplied.)

This contract further provided that Yenter have the right to take immediate possession, which right Yenter exercised.

On May 3, 1943, Yenter having paid the full purchase price as provided by the above contract, Crews executed and delivered to Yenter his warranty deed, whereby he conveyed to Yenter the 570 acres of land:

" * * * together with water and ditch rights, consisting of three (3) second feet of water from the Hale Ditch, a plat of which ditch is now of record in the office of the County Clerk and Recorder of Yuma County, Colorado, conveying hereby such rights in and to said three (3) second feet of water from said ditch as said party of the first part may have under and by virtue of adjudication or adjudications heretofore or hereafter made or entered by a court or courts of competent jurisdiction relative to said Hale Ditch."

On July 30, 1956, Crews, unbeknownst to Yenter, executed, and on August 3, 1956, recorded in Yuma County, a "Correction Deed" whereby he conveyed to Yenter the same lands and the same amount of water as he had conveyed by the above mentioned deed executed May 3, 1943; however, in this correction deed Crews, in describing the water right, inserted the word "extension" after the word "ditch"; this insertion appears four times, which is the number of times the word "ditch" appears. In this deed Crews asserts that it was his intention to convey by the original May 3, 1943, deed to Yenter three feet of *Hale Ditch extension* water, instead of three feet of *Hale Ditch water.* At the time this "correction deed" was recorded by Crews he also had recorded his affidavit, wherein he sets forth that he intended to convey *Hale Ditch extension* water and had no intention to convey any *Hale Ditch* water.

Yenter, on learning of Crews' actions as above set forth, on August 25, 1956, filed his complaint in this

action now before us, and asked that the cloud on his title arising out of Crews recording the above mentioned deed and affidavit be removed and that his title to three second feet of water decreed to the Hale Ditch be quieted and confirmed.

The defendant answered plaintiff's complaint and set up the following defenses:

1. The parties intended to buy and sell *Hale Ditch extension* water, priority No. 40, and did not intend to buy or sell Hale Ditch water, priority No. 38;

2. Laches and estoppel;

3. Waiver;

4. Statute of Limitations — C.R.S. '53, 147-9-17;

5. Crews' right to the water by adverse usage thereof;

6. Rights acquired by color of title, seven years' possession and payment of taxes as provided by CRS '53, 118-7-8.

Crews also filed his counterclaim seeking reformation of his deed of May 3, 1943.

Trial was to the court without a jury. The court allowed counsel for the parties wide latitude in offering what they considered pertinent testimony.

The trial judge entered his findings and decree in favor of Yenter. He found as a fact that:

" * * * there is no patent ambiguity in the deed of May 3, 1943, and that the same did convey to the plaintiff, Theodore S. Yenter, three second feet of water from the Hale Ditch;

"That there was no mutual mistake of fact in the execution of the deed of May 3, 1943, and in this connection, the Court points out that the burden of proof is upon the counter-claimant to establish the allegations of mistake by clear and convincing evidence, which he has failed to do. * * * "

The decree provided that: Yenter's deed of May 3, 1943, is a valid and subsisting deed and conveyed to Yenter three second feet of water from the *Hale Ditch;* that the 1956 deed and affidavit of Crews are a nullity;

that Crews be restrained from attacking or seeking to impeach the validity of his 1943 deed to Yenter, and that Crews' counter-claim for reformation be denied.

Crews is here by writ of error seeking reversal.

From the record before us we conclude that the trial court correctly determined all of the questions presented for its consideration.

Counsel for Crews, in seeking to prove that the parties intended to purchase and sell *Hale Ditch Extension* water rather than *Hale Ditch* water, offered, among other matters, proof (1) that Yenter paid only about $11.40 per acre for his land, whereas Crews in 1943 sold 80 acres of land with three feet of Hale Ditch water for $50.00 per acre; (2) that Yenter's land was never assessed as irrigated land; (3) that Yenter's land, or at least part of it, lies under the *Hale Ditch Extension,* rather than the original *Hale Ditch;* and (4) that Yenter refused to contribute to the maintenance of the Hale Ditch or the extension.

■ The trial judge heard all testimony offered with reference to these matters and concluded that such testimony fell short of the proof required to reform a deed because of mutual mistake.

The trial court's conclusion that there was no patent ambiguity in the deed we find to be amply supported by the record before us.

On September 8, 1938, the district court, by its decree in action No. 2985,

"IN THE MATTER OF THE ADJUDICATION OF PRIORITIES OF WATER RIGHTS IN WATER DISTRICT NO. 49 IN THE STATE OF COLORADO" decreed:

(a) "That said *Hale Ditch* shall have * * * Priority No. 38, * * * for irrigation purposes not to exceed 23 cubic feet of water per second of time * * * of date of Jan. 17, 1908."

(b) "That said *Hale Ditch Extension* shall have * * * Priority No. 40 with date as of May 15, 1908 * * * for

irrigation purposes not to exceed three cubic feet of water per second of time * * * ."

(c) "That said *Hale Ditch Enlargement No. 1* shall have * * * Priority No. 49 * * * for irrigation purposes not to exceed eight and one-half cubic feet of water per second of time * * * as of Nov. 20, 1932." (Emphasis supplied.)

According to this general adjudication decree Crews was found by the court to be one of four claimants of the *Hale Ditch;* he and his brother, W. T. Crews, were found to be the only claimants to the *Hale Ditch Extension,* and he and his brother were found to be the only claimants to the *Hale Ditch Enlargement No. 1.*

This water decree and a plat of the Hale Ditch and Hale Ditch Extension were recorded in the office of the County Clerk and Recorder of Yuma County and are referred to in the contract of purchase and sale and the deed from Crews to Yenter.

Crews contended and offered proof in support thereof that the name "Hale Ditch" was commonly used to refer to the extension and enlargement as well as the original ditch. The court in its adjudication decree used no such loose language in describing the ditch, the extension and the enlargement, each of which is described in detail in the decree.

Certainly anyone armed with Yenter's contract or his deed could go to the office of the County Clerk of Yuma County and from the records of that office find a full and complete description of what he had purchased when he purchased:

" * * * three (3) second feet of water from the Hale Ditch * * * by virtue of adjudication * * * by a Court or Courts of competent jurisdiction, relative to said Hale Ditch."

Were such person to report that he did not know whether the contract described *Hale Ditch* water as shown in Book 333, page 472, or *Hale Ditch Extension* water as shown in Book 333, page 474, of said records,

he would be disregarding the plain wording of the contract, the deed and the decrees.

██ Turning now to the contentions of Crews, that there was a mutual mistake and that the deed should be reformed. We find ample evidence in the record, if believed, to warrant the conclusion that Crews intended to convey Hale Ditch Extension water — not Hale Ditch water. There is a complete lack of proof that Yenter ever intended to purchase anything other than that described in his contract and deed.

Reformation is had to correct mutual mistakes, not one-party mistakes. Its purpose is to make the instrument speak the intentions of both parties, not just one.

It appears from the record that Yenter was not familiar with any of these ditches or priorities; possibly he would have accepted the contract had it described the water as *Hale Ditch Extension*. On the other hand, Crews was familiar with the Hale Ditch, the Hale Ditch Extension and the Hale Ditch Enlargement No. 1 — he was one of the claimants to each of the three priorities; he had participated in the adjudication proceedings which culminated in a decree dated September 8, 1938, exactly eight months before he sold to Yenter.

Another bit of evidence that might well lead one to conclude that Crews made no mistake in conveying *Hale Ditch* water is the admitted fact that Crews, when he signed his contract with Yenter, did not own three feet of *Hale Ditch Extension* water; he owned only one and one-half feet. His brother, or his brother's estate, owned the other one and one-half feet, which Crews intended to acquire and later did acquire. At the time he signed the contract, Crews owned five and three-fourths feet of *Hale Ditch* water. One might well conclude that Crews made no mistake when he entered into the contract to sell that which he had, rather than that which he did not have but hoped to acquire.

The trial court, as pointed out above, permitted counsel to present any and all evidence that might bear on

any of the issues presented, the findings and decree are amply supported by the documents and testimony, and under well established rules are not to be disturbed on review.

The judgment is affirmed.

Mr. Chief Justice Sutton and Mr. Justice Doyle dissent.

Mr. Chief Justice Sutton dissenting:

The basic fallacy of the majority opinion is that it fails to recognize, as did the trial court, that a *latent ambiguity* exists in the deed in question. In such a case extrinsic evidence is admissible to show the intention of the parties and once admitted it must be weighed and used and cannot be ignored and disregarded by the trial court. In cases of this kind where equitable relief is sought by the parties " * * * no hard and fast rule can be laid down to govern courts of equity." *Stubbs v. Standard Life Association* (1952) 125 Colo. 278, 242 P. (2d) 819.

The construction placed upon this deed by the parties' actions, as shown by the evidence here, before the Bonny Dam was built and before the controversy arose, is a reliable test of their true intention and interpretation of this deed. *Greeley & Loveland Irrigation Co. v. McCloughan* (1959) 140 Colo. 173, 342 P. (2d) 1045.

In order to properly discuss this phase of the case it will be necessary for me to again recite many of the facts set forth in the majority opinion and add thereto certain necessary ones not therein mentioned. I will refer to the parties by name or as they appeared in the trial court wherein plaintiff in error was defendant and defendants in error were plaintiffs. For reasons which later appear I will sometimes refer to the land and water in question as having been sold to "plaintiffs" rather than only to plaintiff Theodore S. Yenter.

The record discloses that on May 3, 1943, in considera-

tion of $6500.00 defendant conveyed to Theodore S. Yenter, who subsequently conveyed to himself and his wife in joint tenancy, 570 acres of farm land located in Yuma County, Colorado. Following the legal description of the land appeared these words, the meaning of which is now in dispute:

" * * * together with water and ditch rights, consisting of three (3) second feet of water from the Hale Ditch, a plat of which ditch is now of record in the office of the County Clerk and Recorder of Yuma County, Colorado, conveying hereby such rights in and to said three (3) second feet of water from said ditch as said party of the first part may have under and by virtue of adjudication or adjudications heretofore or hereafter made or entered by a court or courts of competent jurisdiction relative to said Hale Ditch; * * * ."

At the time Crews sold to Mr. Yenter, a written contract was entered into providing that the ditch rights in dispute would be conveyed by bill of sale. By deed time in 1943, Crews owned not only the three cubic feet of water per second under priority No. 40 (the extension ditch) but also owned parts of priorities No. 38 and No. 49; his interests therein having been both purchased and inherited over the years and both before and after the Yenter contract. In 1943 he owned five and three fourths cubic feet of water per second more or less in priority No. 38.

Defendant also had other lands in the area, and after his sale to Yenter, sold off at least some of his other lands, together with all of his remaining rights in the Hale Ditch. None of these latter purchasers were named as parties to this action even though plaintiffs originally sought not only to remove a cloud from their own title but also to quiet title to the ditch rights in question which of course affected the other purchasers.

After the delivery and acceptance of the Yenter deed, plaintiffs went into possession and farmed some of the land conveyed, using both pump water and whatever

water remained in the Hale Ditch from its intermittent flow when it was open and not used by those owners having lands lying above theirs.

Both parties admit that the name "Hale Ditch," up until the time this controversy arose, had been a generic term embracing one ditch several miles in length; that this ditch in fact consists of three separate filings made up of two segments and an enlargement; that originally there was the "Hale Ditch" with priority No. 38 under date of January 1908 with twenty-three cubic feet of water per second; this was followed by a lengthening of the ditch called the "Hale Ditch Extension" with priority No. 40 dated May 1908 with three cubic feet of water per second therefrom assigned to the land in question; and in 1932 the entire ditch was increased in size by the "Hale Ditch Enlargement" with an addition of eight and a half cubic feet of water per second.

At the trial Mr. Yenter testified that he made no claim to any water from the Hale Ditch Extension, claiming solely under priority No. 38, yet the undisputed evidence is that it is only through the extension that he could get Hale Ditch water upon his lands. Physically the original Hale Ditch does not touch the land sold Yenter. In *Hitchens v. Milner Land, etc. Co.* (1919), 65 Colo. 597, 178 Pac. 575, the fact that the water in dispute never could be applied to the land involved, due to its possession by others, was stated by this court as sufficient to put subsequent purchasers of the land on notice as to the water and ditch right. Thus, here the fact that the only way the Yenters could get Hale Ditch water was through the Hale Ditch Extension strongly indicates that the true intention of the parties was that it was the extension water only that was referred to in the deed to Yenter and the physical circumstances were such as to constitute notice thereof at the time.

Here we should say that the trial court properly, in view of the deed wording in dispute, admitted extrinsic evidence which gives the rather full picture set forth

herein of this entire transaction. This is long established law in Colorado. See *State v. Matz* (1914) 26 Colo. App. 511, 520, 521, 143 Pac. 1039; *Sullivan v. Collins* (1895), 20 Colo. 528, 39 Pac. 334; and *Laughlin v. Hawley* (1886), 9 Colo. 170, 11 Pac. 45. In the latter case it was said: "Where the description of the property is in such general terms as to call for evidence *dehors* the writing, parol evidence is admissible to apply it to the subject-matter, and thereby render certain what would otherwise be doubtful and indefinite." And in *Stanley v. Green* (1859), 12 Cal. 148, it was said:

"It is undoubtedly essential to the validity of a conveyance, that the thing conveyed must be described so as to be capable of identification, but it is not essential that the conveyance should itself contain such a description as to enable the identification to be made without the aid of extrinsic evidence."

It is also disclosed that at no time before this dispute arose was plaintiff's land assessed as irrigated land; that the going price for irrigated land, at the time of this transaction in 1943, was about $50.00 per acre as against $11.40 per acre paid by Mr. Yenter. It appears that at no time were there any measuring boxes or division devices in the ditch and no ditch riders were employed by the owners.

In 1948 to 1950 or 1951 the Bonny Dam was constructed across the South Fork of the Republican River. This covered the original diversion point of the Hale Ditch and did away with the prior often washed out sand dams previously used for the ditch. All Hale Ditch users are below and to the east of the dam and the flow of water to this ditch is now apparently stabilized and consequently more usable and much more valuable.

It appears that before defendant sold to Mr. Yenter he had taken him upon the land and pointed out the extension ditch and told him he could only expect some water in the spring and fall, though Yenter testified that he was told there might be some in the summer

in addition; also, that during a period of several years no water at all flowed through the extension ditch because part of the Hale Ditch was ploughed into fields by neighbors above the Yenters. The evidence is that Mr. Yenter refused on two occasions to help his neighbors clean out the ditch because, as he said to them, his water right was not a very good one.

In other words, the price paid for the land, its non-irrigated nature for tax purposes, its location on the ditch extension, and the infrequent or total lack of available water and the Yenters' refusal to help clear the ditch, are undisputed facts bearing on the question which later arose as to the meaning of the above quoted wording of the deed.

Many years after this sale, and because some question had then arisen as to what had been conveyed to Mr. Yenter, defendant Crews had a correction deed drafted, together with an affidavit, both of which he placed on record on August 3, 1956, to clarify what he contends was meant by the description in the original deed. In substance, he set forth that it was the three cubic feet per second of water that had been adjudicated to the "Hale Ditch Extension" that was intended to be conveyed. It is this deed and affidavit which the plaintiffs seek to have removed as a cloud on their title.

After a trial to the court, during which the above recited evidence was received, the trial court denied to plaintiffs the relief of quieting title, granted the relief of removing the cloud from their title and denied defendant's request for reformation of the deed. The defendant only seeks relief here.

Several points are raised and discussed fully and ably in the briefs of both parties. However, to me there is only one issue, which is determinative of the dispute. It relates to whether the trial court was in error in determining that no ambiguity appears on the face of the deed. Stated another way the question is:

AS A MATTER OF LAW IS THE DEED DESCRIP-

TION IN QUESTION AMBIGUOUS SO AS TO PERMIT THE TRIAL COURT TO DETERMINE WHAT WAS THE TRUE INTENTION OF THE PARTIES?

Contrary to both the trial court's determination of this question and that of my brethren in the majority opinion I would answer this question in the affirmative. As stated at the beginning of this dissent I deem the answer to turn upon the difference between a latent and patent ambiguity. I believe the language used is both certain and plain so if an ambiguity exists it constitutes a latent defect.

Let us analyze the wording in dispute: First, it states that the grantor conveys "* * * three (3) second feet of water from the Hale Ditch * * *." If it had stopped there obviously the grantor would not have any standing to challenge it here. The same can be said if it had referred to its priority #38, such as "* * * out of the Hale Ditch priority #38." The fact is, however, that there were three different priorities lumped together and referred to by local custom and usage as the "Hale Ditch" as mentioned above. The grantor (who the record shows did not have his priority number data with him the day everyone wanted to close the deal in a town distant from his home) logically and naturally insisted that an explanation of which ditch right was involved be added by the lawyer in whose office the parties were closing the sale. He had him add two things to the description: First, a reference to the plat of record which shows the land in question is on the extension of the Hale Ditch, and secondly, he had added reference to adjudicated water, since he personally had not received any of his other rights by direct adjudication. We note that the attorney in question was representing both buyer and seller in this transaction as is often done in real estate transactions in Colorado, hence neither party is entitled to construe the deed against the other.

In view of what I have previously stated concerning

the land in question being assessed and purchased as dry farm land, the parties having visited it before the sale, and, in view of the fact that the seller owned several different rights in the ditch in question, it is obvious that the seller was attempting to limit or describe as best he could at the time, that it was priority #40 which he meant to sell.

Thus as a matter of law, a latent ambiguity arose in this deed and the defendant was entitled to show the intention of the parties as to which ditch right was in fact intended to be conveyed. *Blair v. Bruns* (1885), 8 Colo. 397, 8 Pac. 569; and see definition of "latent ambiguity" in "Bouvier's Law Dictionary" Third Revision. The trial court having properly admitted considerable testimony by disinterested witnesses, which is corroborated by the physical facts and circumstances on the matter of ambiguity *vel non* and on intent, then proceeded to deny the effect thereof by holding to the contrary. As a matter of law this was error, for the record discloses no adequate evidence to sustain such a finding. In such case this court is as competent and able as the trial court to apply the law to the facts and should do so. See *Carpenter v. Hill* (1955), 131 Colo. 553, 283 P. (2d) 963, and *Radke v. Union Pacific* (1958), 138 Colo. 189, 334 P. (2d) 1077.

The rule laid down in 2 *Meeson & Welsby's Reports, English Exchequer,* 129, followed in principle without citation in *State,* supra, *Sullivan,* supra, and *Laughlin,* supra, and applicable here is:

"Assuming that the intention appears on the face of the instrument to be determinate, if, after exhausting such evidence of the surrounding circumstances as is necessary to place the court at the point of view of the maker of the instrument, there is still an ambiguity as to which of two objects is meant, — the description being sufficient to point with legal certainty to either if there were no other, — the intention as between those objects

may be proved by direct evidence outside the instrument."

In other words, though a patent ambiguity appearing upon the face of the instrument cannot be explained by extrinsic evidence (see *Bouvier's Law Dictionary, Third Edition,* Vol. 2, "Patent Ambiguity" and authorities cited thereunder) nevertheless where the terms used apply indifferently to more than one thing or person, evidence may be introduced of intent and of any material fact relating to the property claimed and the circumstances and affairs of the grantor in order to establish which of the things or person were intended.

Thus, this is not the usual type of case where reformation is allowed upon the proper proof of a mutual mistake, for this is a question of interpretation. Here the law implies a mutual mistake in order to permit reformation of the original deed due to the latent ambiguity therein, which was raised by the Yenters' later interpretation thereof. Here the equities between the original parties require that relief be furnished defendant Crews.

I also point out that since the other owners, to whom Crews had conveyed his remaining ditch rights, were not made parties to this action, the trial court properly denied the quiet title relief sought. Even were the ambiguity involved here a patent one, it is clear that the other owners of water rights referred to would have had to be made parties to this action (since their interests would be affected thereby) and no complete adjudication of the issue here presented could be had without them. *Horner v. Bramwell* (1896), 23 Colo. 238, 47 Pac. 462. Thus, in any event a reversal would be required.

It follows that the finding of the trial court, not being supported by the evidence, and granting plaintiffs' demand to remove the correction deed and affidavit as clouds on their title, was erroneous.

It would reverse the judgment and direct the trial court to enter judgment for defendant reforming the deed.

Mr. Justice Doyle authorizes me to state that he con-
curs in this dissent.