# No. 17,138.

SMITH *v.* WHITLOW ET AL.
(268 P. [2d] 1031)

Decided March 29, 1954.   Rehearing denied April 19, 1954.

Mr. ROBERT A. BEHRMAN, for plaintiff in error.

Mr. WILLIAM C. RHODES, for defendant in error Whitlow, Sr.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the Court.

DEFENDANT in error Whitlow, as assignee of Keith B. Hendrickson, on the 8th day of November, 1951, filed a complaint on account stated against Smith, plaintiff in error herein, in the district court of Weld county. The substance of the complaint is to the effect that on September 14, 1949, defendant Smith, as owner, entered into a written contract with Hendrickson to erect buildings and improvements on a certain airfield near Eaton, Colorado, known as Barnett's Airfield, and agreed to pay Hendrickson, the contractor, the total sum of $9,371.59 on terms set out in the contract, a copy of which was attached to the complaint as an exhibit. $6,000.00 was paid on the contract which had been assigned by Hendrickson to Whitlow, defendant in error, and judgment in the sum of $4,755.77 was prayed for with interest from January 1, 1950. The contract was signed by Keith B. Hendrickson, and E. D. Smith, owner.

On February 7, 1952, defendant Smith filed his answer, admitting the making and signing of the contract referred to, but in substance, alleging that since he was the president and agent of Texair Dusters, Inc., a Colorado corporation, which took title to the land and property involved on the same day the contract was entered into, that by a mutual mistake the contract should have been between Texair Dusters, Inc., as owner, and Hendrickson, and not by him as owner. He further alleged that he made it known to Hendrickson at the time of entering into the contract that he was contracting for

the corporation and not for himself; and further alleged that Hendrickson had an attorney prepare a contract in which Smith was named as owner but which was not signed by him, and he then had his own attorney prepare a contract; that the scrivener, having before him the contract prepared by the other attorney, followed the form of that contract and prepared the contract as between Smith and Hendrickson; and prayed for judgment that the contract be reformed by striking therefrom the name of defendant wherever it occurred, including the signatures, and substituting therefor the name and signature of Texair Dusters, Inc.

Plaintiff filed a reply to the counterclaim, generally denying the pertinent allegations contained in the answer. Texair Dusters, Inc., was added as third party defendant; however, the corporation defaulted. Trial was had to the court.

At a pre-trial conference it was stipulated that the only issue to be tried was as to whether or not the contract, exhibit A of the complaint, was executed by Smith in his individual capacity or as agent for Texair Dusters, Inc., and whether thereby the corporation was the real party in interest; it further was stipulated that the case would be tried on the issue made by defendant's counterclaim and on the question of whether there was a mistake sufficient in law to justify reforming the contract by inserting in the contract Texair Dusters, Inc., as a party thereto instead of, or in the place of, Smith. The amounts due involved were stipulated to be true and correct. At the conclusion of the testimony and arguments, the trial court ordered entry of judgment in favor of defendant, who is now plaintiff in error, by reforming the contract as prayed for in the answer and third-party complaint; by the substitution therein of the name of the corporation for that of Smith wherever it appeared in the contract; and ordered dismissal of the action against Smith.

Plaintiff Whitlow then filed a motion for new trial,

specifying as grounds therefor that the findings of the trial court were contrary to the evidence, because there was no showing of mutual mistake or fraud sufficient to authorize the reformation of the contract, and that the conclusions of law and the judgment entered were erroneous because there was no showing of mutual mistake or fraud. Thereafter the trial court reversed its former ruling and announced its decision and rule to the effect that the evidence did not show a mutual mistake, but only a unilateral mistake, and that because the contract was fully performed on one side it would be a vain and futile thing to reform it; therefore the reformation previously granted was improper and it ordered judgment to be entered against Smith, the present plaintiff in error, as requested in the complaint, and judgment was so entered. Smith filed a motion for new trial setting up error on the part of the trial court in not adhering to its original finding, because the evidence supported the original judgment. This motion was denied on March 23, 1953, and error is not specified thereto.

A brief summary of the pertinent testimony is necessary and is as follows: Smith testified that during the negotiations with Hendrickson he made known the corporate nature of the enterprise and the fact that the corporation was to be the owner of the airfield. This was denied by Hendrickson, and in his denial he said that he assumed that Smith was the purchaser; at any rate, Hendrickson retained an attorney to prepare a contract for the contemplated work. This contract was made an exhibit, and therein Smith was referred to as the owner. It further was set out in the contract that, "the Owner has purchased that certain air field known as Barnett's Air Field." This proposed contract was submitted to Smith by Hendrickson for his signature, but Smith voiced certain objections to it and refused to sign it, because of the terms of the contract concerning the completion date, the time of payment, and the fact that it was drawn in the form of a personal obligation

of Smith. Hendrickson testified that Smith objected to certain provisions of the proposed contract, but that the question of capacity was not mentioned; he further testified that Smith had previously been insistent that the contract for the work should be between the parties in their individual capacity. Smith testified that he took this proposed contract to his attorney and instructed him to make changes in it, including a change which would make it a contract of the Texair Dusters, Inc., rather than Smith's individual contract. The attorney testified that Smith so instructed him, and that it was his intention to so draft the contract; however, with this proposed contract before him he prepared the contract which finally was signed by the parties and it was, and is, Smith's individual contract; therein Smith is referred to as owner; and that the owner intends to erect the buildings hereinbefore mentioned. The attorney explained his failure to draft the contract as instructed by saying that he used the proposed contract when dictating the new agreement and inadvertently told his secretary to use the same heading or else he dictated the same heading to her, because he was primarily concerned with the details of the agreement concerning the adequate protection of the corporation. After this latter agreement was prepared by Smith's attorney, Smith went to the latter's office where he met Hendrickson, and Smith says that in reliance on what he had told his attorney as to how to draw the contract, he signed it without reading it; and the contract was then and there also signed by Hendrickson. The attorney testified that at the time of the signing of the contract by the parties, he stated to Hendrickson that the contract was to be the contract of Texair, Inc., and not that of Smith individually; however, Hendrickson denied that there was any discussion to the effect that the contract was to be as the attorney had testified, and that there was never any doubt in his mind that he was contracting with Smith and not the corporation. On the same date, September 14, 1949, a

deed was made by Barnetts, the then owners of the property, to Texair Dusters, Inc. Other matters concerning orders for, and acknowledgements of, extra work, are set out in the record; however, this case must stand or fall upon what was the intention of both parties at the time of making the contract, and their understanding concerning it. A reformation of the contract in this case cannot properly be had unless there was a mutual mistake.

In addition to claiming error on the part of the trial court with reference as to whether or not the evidence supported the original judgment, counsel for Smith, plaintiff in error, also contends that the court committed error in reversing its original judgment without a retrial, contrary to Rule 59 (a) R.C.P. Colo., when there is substantial evidence to support the original judgment.

As to the latter contention our Court, in the case of *Goodwin v. Eller,* 127 Colo. 529, 258 P. (2d) 493, posed the following question: "Where an action has been tried to the court without a jury, and a motion for new trial has been filed after entry of findings and judgment, does the trial court have the power, upon consideration of the said motion, to vacate the original findings and judgment; reverse itself; and enter a judgment in favor of the opposite party?" The question was answered in the affirmative, which clearly disposes of this matter as it now is before us.

A study of the testimony briefly summarized herein clearly discloses that there was no mutual mistake made by both Smith and Hendrickson in the matter of the capacity of the parties; and accepting Smith's and his attorney's testimony, at best it would be only a unilateral mistake on the part of Smith, and further, there is no fraud or wrongful conduct disclosed in the evidence on the part of Hendrickson. It further is shown that Hendrickson fully complied with every part of the contract. It must be remembered that Smith had an opportunity to read the second and final draft of the

contract, but neglected to do so; and further, the attorney was present and, according to his version of the matter, he surely would have known that if it was a contract with a corporation, that to make a valid execution thereof binding upon the corporation, it would have to be attested by the secretary of the corporation and the corporate seal impressed. In the case of *Muchow v. Central City Gold Mines Co.*, 100 Colo. 58, 65 P. (2d) 702, our Court, in effect, said that a contract, such as is now before us, will not be reformed on the ground of mistake at the instance of the party who prepared it when it appears that his alleged lack of knowledge was due to his failure to exercise reasonable diligence; and further, that equity will not relieve a party from the ill effects of a contract voluntarily executed, on the ground of mutual mistake, where he could have been fully advised by the exercise of reasonable diligence. In the exercise of such due diligence as is required, Smith should have read the contract before signing it, and been aware of the fact that it was an individual contract and not that of the corporation, which he claimed to be representing. Equity will not relieve him from his own negligence or from the carelessness of his counsel, and more particularly so if it appears that it would be to the injury of the other contracting party. While not clear from the record, there is a flash in the brief which would indicate that at the time of the making of the contract, the corporation was a flourishing concern. Where no question of fraud, bad faith or inequitable conduct is involved, and the claim of a right to reform a contract is solely on a mistake, it is absolutely necessary that the mistake be mutual, and that both parties understood the contract to be different from what it shows on its face, and that they understood the contract would have been different except for a mistake. In the testimony in the instant case, there is a lack of sufficient showing that Hendrickson ever understood or intended the contract to be other than as it stands before us; and it further is

lacking in any showing that Hendrickson labored under any misconception in respect to the capacity of the parties. According to the rule in this jurisdiction, both parties must labor under the same erroneous conception in regard to the terms of the contract and the capacity of the parties thereto; further, that in order to entitle one to a reformation of a contract on the ground of a mutual mistake, the evidence must be clear, unequivocal and indubitable. *Smith v. Anderson,* 121 Colo. 175, 214 P. (2d) 366.

It is abundantly clear from the record in this case that the trial court, in its original judgment, erred in making a new contract between the parties, and that it, in proper judicial fashion, acknowledged its error by setting aside the erroneous finding and entering judgment in favor of plaintiff, which judgment accordingly is affirmed.