Jay GREEN, doing business as Big Country Realty, Plaintiff-Appellee,

v.

Thomas M. GRANT, Dorothy L. Grant, Richard H. Grant, Jr., and Winifred G. Grant, Defendants-Appellants.

and

In the Matter of the ESTATE OF Johnnie C. GREEN, Deceased.

The ESTATE OF Johnnie C. GREEN, Appellee,

v.

Thomas M. GRANT, Dorothy L. Grant, Richard H. Grant, Jr., and Winifred G. Grant, Claimants-Appellants.

No. 79CA0195.

Colorado Court of Appeals, Div. II.

July 9, 1981.

Rehearing Denied July 30, 1981.

Sharp & Black, P. C., Thomas R. Sharp, Steamboat Springs, for plaintiff-appellee.

James C. Vaughters, Denver, for defendants-appellants and claimants-appellants.

BERMAN, Judge.

In this action arising from a real estate brokerage contract which provided for commission payments by installments, the broker, Jay Green (now deceased), sued for one of those installments and the sellers, the Grants, counterclaimed for restitution and damages asserting, *inter alia*, breach of fiduciary duty on the broker's part. Sellers appeal the trial court judgment granting broker's prayer for relief and denying sellers' counterclaim. We affirm.

The record reveals that in 1972 sellers entered into a listing agreement with broker for the sale of a parcel of land located in Routt County, Colorado. Pursuant to such agreement, broker obtained a buyer, a sale contract in the total amount of $880,000 was executed, and, on February 2, 1973, closing occurred. At closing, sellers paid broker $8,000 under the commission agreement, but have made no further payments.

The buyer of the land in question was a partnership. In early March 1973, after the closing, broker became a partner in that purchasing partnership. Before closing, though, broker did not inform sellers that he intended to join such partnership.

The contract of sale called for buyer to make annual payments in the amount of $150,000 toward the purchase price. The required first payment, though, was not made when due, but was then the subject of negotiation between buyer and sellers. These negotiations resulted in sellers' agreement, made shortly after the payment's due date, to accept $127,500, plus a limited interest in the purchasing partnership, in full satisfaction of that first payment. The $127,500 was thereupon tendered and accepted. The purchasing partnership, however, defaulted as to all subsequent annual payments.

Concerning payment of the broker's commission, the separate brokerage contract provided in pertinent part:

"$ 8,000.00 at closing
$80,000 principal balance due [broker] shall draw 7½% interest on the unpaid balance until fully paid and shall be paid as per the following.
Due Date:
December 1, 1973    $2,100.00 plus accrued interest

.  .  .  .

If the purchaser defaults in the making of said payment to the Sellers as per the agreement dated December 15, 1973 [sic] this agreement will become Null and Void between [broker] and [sellers]."

The trial court judgment awarded broker $2,100 representing the first commission installment, plus $5,000 representing interest on the $80,000 commission balance for the period from closing until the due date of the first commission installment. Broker's amended complaint did not seek to recover for any subsequent installments or interest. The trial court denied sellers' counterclaim for damages or, in the alternative, restitution of the $8,000 they initially paid toward the broker's commission.

I.

On appeal, sellers contend first that the award to broker of damages in the amount of $7,100 is excessive in that the interest component of that award was calculated on the basis of the full $80,000 commission balance, rather than merely on $2,100, the amount of the first installment due. Sellers reason that since broker failed to pray for recovery of the balance of the commission payments, broker waived any claim to interest on that balance. We reject sellers' contentions.

The evidence reflects and the trial court found that, by virtue of services performed and upon consummation of the sale of the realty here involved, the broker had earned his commission. Indeed, sellers acknowledged their commission obligation by paying the initial $8,000 toward the total commission as provided by the brokerage agreement.

■ The question becomes to what extent buyer's default relieved sellers of their obligation to pay the balance of the commission. In that regard, the trial court in effect construed the language contained in the last paragraph of the commission agreement, quoted *supra*, to render that agreement, in the event of buyer's default, void *prospectively* rather than void *ab initio*. We perceive no error in such a reading.

■ Further, the evidence reflected and the trial court found that sellers' acceptance, after negotiations, of the buyer's tender of $127,500, plus the limited partnership interest, shortly after the first annual purchase price payment became due constituted an accord and satisfaction as to that first payment. Such accord and satisfac-

tion cured any technical default as to such first payment.

Given that buyer did indeed default as to its second annual payment obligation, and as to all payments due thereafter, the sellers' obligation under the commission agreement was extinguished as to all payments save the first. But since sellers were freed from the agreement *only prospectively*, they were bound to pay the first commission installment in complete accordance with the terms of the agreement, including the express provision as to interest on the full balance outstanding at the time that first installment came due.

■ There is no merit in sellers' contention that broker's failure to pray for recovery of the remaining commission installments effected a waiver as to the interest obligation on the previously outstanding commission balance. Under the very terms of the commission agreement, the interest obligation *had already matured* with respect to the balance which remained outstanding through the first installment date. Indeed, broker's failure to claim additional commission installments merely manifested his own recognition that, owing to the prospective voidness of the agreement, he was not entitled to enforce it as to those installments arising after buyer's default.

It may not reasonably be inferred that, by declining to claim additional payments, broker intended a waiver of those rights with which he was already vested by virtue of sellers' acceptance of buyer's $127,500 first payment. Under the trial court's construction of the agreement, which construction we have adopted, it is here immaterial that buyer's later default divested broker of any right *in futuro* which he otherwise would have had to the balance of the commission.

## II.

Sellers' counterclaim, alleging breach of fiduciary duty on broker's part, is premised primarily upon the fact that the partnership agreement to which broker and buyer were parties was dated February 1, 1973, the day before the closing of the real estate sale here involved. Sellers contend, in effect, that broker's obtaining of a financial interest in the buying entity, which interest arose before consummation of the sale, constituted per se a breach of fiduciary duty. We find it unnecessary, though, to address sellers' latter contention.

The only witness at trial was the purchasing partnership's managing partner. He testified, over sellers' objection, that, while the partnership agreement indeed was dated February 1, broker actually executed the document in early March 1973, and had no interest in the purchasing partnership before such execution.

■ Sellers contend that the trial court's admission of such testimony ran afoul of the parol evidence rule in that the testimony served to contradict a term fully expressed in the written partnership document. However, "[p]arol evidence can be used to vary or contradict a contract when the litigation is between a party to the contract and a stranger thereto." *Cranford v. McNiece*, 252 Or. 446, 450 P.2d 529 (1969); *Continental Trust Co. v. Johnston*, 67 Colo. 592, 188 P. 1112 (1920); *see generally* 9 J. Wigmore, *Evidence* § 2446 (3rd ed. 1940) (especially 1980 supplement). "This is true even where the evidence is offered by the party to the contract." *Cranford, supra.* Since sellers were strangers to the partnership agreement, the parol evidence rule did not in the instant case preclude admission of the testimony offered to show that the agreement was not executed on the date contained therein.

Therefore, there was admissible evidence to support the trial court's finding that broker did not acquire an interest in the buying entity until over a month after his contractual relationship with sellers had expired. And, the record as a whole supports the trial court's conclusion that no breach of fiduciary duty occurred. Accordingly, we are bound by the trial court's findings and conclusions as to these issues. *Linley v. Hanson*, 173 Colo. 239, 477 P.2d 453 (1970). Thus, we perceive no error in the trial court's denial of sellers' counterclaim.

## III.

By their remaining arguments, sellers challenge specific findings of fact by the trial court. In the course of this opinion, reference has already been made to most of the disputed findings. Contrary to sellers' position, we find substantial evidence in the record to support the findings in question. Consequently, they may not be disturbed on appeal. *Linley, supra.*

Accordingly, the judgment is affirmed.

SMITH and VAN CISE, JJ., concur.