Deanna M. NEVES, Individually and as natural guardian of Manuel D. Neves, III, a minor, and Manuel D. Neves, II, Individually and as natural guardian and duly appointed conservator of the Estate of Manuel D. Neves, III, a minor, protected person, Plaintiffs-Appellants,

v.

Robert E. POTTER, D.O., and Gilbert Roth, D.O., Defendants-Appellees.

No. 85CA1001.

Colorado Court of Appeals, Div. I.

Aug. 6, 1987.

Rehearing Denied Sept. 10, 1987.

Certiorari Granted (Neves) Jan. 25, 1988.

Law Firm of Kenton D. Kinnaird, Kenton D. Kinnaird, Colorado Springs, for plaintiffs-appellants.

Cooper & Kelley, P.C., Susan R. Roberts, Mickey T. Mihm, Denver, for defendant-appellee Robert E. Potter, D.O.

Wills & Gorsuch, Kirgis, Lee R. Wills, Colorado Springs, for defendant-appellee Gilbert Roth, D.O.

KELLY, Judge.

The plaintiffs, Deanna M. and Manuel D. Neves II, individually and as guardians of and conservator for Manuel D. Neves III, appeal the summary judgment entered in favor of the defendants, Robert E. Potter, D.O., and Gilbert Roth, D.O. The plaintiffs contend that the trial court erred in ruling that a release signed in settlement of a claim against a hospital also operated to release the defendants. We affirm.

In 1974, Manuel D. Neves III, then 22–months old, entered Eisenhower Hospital in Colorado Springs for surgery on his right ear and for an adenoidectomy. The defendants were the attending and operating physicians. Following surgery, the doctors used a post-nasal pack to control post-operative bleeding, and they left it tied in place when the child was taken to the recovery room. The doctors issued routine post-operative orders to nurses, including a prescription for codeine if needed to relieve Manuel's discomfort.

Within a few hours, an attending nurse noted that Manuel had stopped breathing, but hospital staff members successfully resuscitated him, removing the nasal pack in the process. During the crisis, the hospital staff discovered that an attending nurse had accidentally given the boy morphine earlier in the evening rather than codeine as prescribed. It is uncontroverted that

the amount of morphine administered was a substantial overdose for a child of Manuel's age and size and could have caused the respiratory arrest.

Manuel seemed to recover from the episode; however, he later exhibited both a speech defect and a mild learning disability. Alleging brain damage resulting from respiratory arrest, possibly brought on by the narcotic overdose, Manuel's parents made a claim against the hospital and, in 1978, reached a court-approved settlement with its insurer.

As a condition of the settlement, the Neves executed a release absolving the hospital "as well as *any and all other persons*, firms, or corporations who are or might be liable of and from any claims, demands, suits, actions and causes of actions which we now have, or which we may have, ... on account of, or in any way growing out of any and all known and unknown personal injuries ... *resulting or to result from malpractice* which occurred on or about August, 1974...." (emphasis supplied) The probate court order approving the settlement, however, stated that the release settled all the Neves' claims against the hospital and its agents.

Subsequently, the plaintiffs brought this lawsuit against Potter and Roth. The complaint alleges that, before the morphine overdose was administered, the defendants negligently placed the nasal pack in such a way that it had blocked Manuel's breathing passages, thereby precipitating the respiratory arrest.

The defendants moved for summary judgment, asserting, among other things, the release. The trial court granted the defendants' motion.

The Neves contend that the trial court erred in relying primarily on the document's general terms releasing "any and all other persons." They argue that The Uniform Contribution Among Tortfeasors Act, § 13–50.5–105, C.R.S. (1986 Cum. Supp.), does not mandate that a release apply unequivocally to all unnamed tortfeasors in addition to those expressly named in the instrument. We agree with this principle but conclude that the release language did include defendants.

Summary judgment is not warranted without a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." C.R.C.P. 56(c). In passing upon a motion for summary judgment, it is not the court's function to *decide* issues of fact but " 'solely to determine whether there *is* an issue of fact to be tried' "; if not, the court is then in a "position to determine the issue strictly as a matter of law." *Morlan v. Durland Trust Co.*, 127 Colo. 5, 252 P.2d 98 (1952).

The central question in this case is whether, as a matter of law, the release executed by the Neves released the doctors pursuant to § 13–50.5–105(1)(a), C.R.S. (1986 Cum.Supp.), which states that:

"When a release ... is given in good faith to one of two or more persons liable in tort for the same injury ...:

(a) It does not discharge any of the other tortfeasors from liability ... for the injury, ... *unless its terms so provide....*" (emphasis added)

*See also* Restatement (Second) of Torts § 885(1) (1979) ("a valid release of one tortfeasor ... does not discharge others ... unless it is agreed it will discharge them.")

The courts construing the Act have been divided in their interpretation of the above-quoted phrase, "unless its terms so provide."

Those which interpret the act expansively have held that a release discharges not only named tortfeasors but also those who come within a stated general class of tortfeasors. *See, e.g., Peters v. Butler*, 253 Md. 7, 251 A.2d 600 (1969); *Johnson v. City of Las Cruces*, 86 N.M. 196, 521 P.2d 1037 (Ct.App.1974).

In other jurisdictions, the courts interpret the statute restrictively, holding that a release must name the parties who are discharged from liability. *See, e.g., Bjork*

*v. Chrysler Corp.,* 702 P.2d 146 (Wyo. 1985); *Alaska Airlines, Inc. v. Sweat,* 568 P.2d 916 (Alaska 1977). *See also Duncan v. Cessna,* 665 S.W.2d 414 (Tex.1984) (Texas has not adopted the Act; nevertheless, a release does not absolve tortfeasors unless named or sufficiently described).

Still other jurisdictions hold that a release creates a *presumption* of full release which may be rebutted by evidence of fraud, misrepresentation, or mutual mistake in executing the release. *See, e.g., Whitt v. Hutchison,* 43 Ohio St.2d 53, 330 N.E.2d 678 (1975).

Prior to the adoption of the Uniform Act in 1977, Colorado adhered to the common law rule enunciated in *Sams v. Curfman,* 111 Colo. 124, 137 P.2d 1017 (1943). It was there stated that an injury resulting from the negligence of the defendant doctors was presumed to have been included in a suit against the primary tortfeasor and, thus, included in the settlement of that action. The release in that action was held to include the defendant doctors. *See also Ashley v. Roche,* 163 Colo. 498, 431 P.2d 783 (1967).

In *Summey v. Lacy,* 42 Colo.App. 1, 588 P.2d 892 (1978), we interpreted § 13–50.5–105(1) as abolishing the common law rule of *Sams v. Curfman, supra.* Accordingly, we held in *Summey* that, because the release there did not expressly discharge the claim against the defendant, the release did not comply with the requirements of the Act that its terms provide for release.

*Sams v. Curfman* and *Ashley v. Roche* are distinguishable on their facts, but these distinctions do not require us to construe the Uniform Act differently than we did in *Summey.* While the release before us did not explicitly name the defendants as parties to the discharge from liability, we hold that the language "any and all other persons" in a release when coupled with the limiting language "resulting or to result from malpractice which occurred" on a specific date is sufficiently specific to identify those to be discharged and to comply with the requirements of the Act. Hence, the trial court correctly ruled that the Neves' release discharged the defendants.

The plaintiffs' other arguments are without merit.

The judgment is affirmed.

PIERCE and METZGER, JJ., concur.